Bernard S. Meter, J.
The court has previously held that plaintiff insurer is not entitled to rescind a policy of insurance on the life of John Yocale and that Yocale’s widow, defendant Baumel, is entitled to recover on the policy. By stipulation defendant Goldfarb is to receive a proportionate part of the widow’s recovery. The question now presented is what the widow is entitled to recover.
The policy in question is a $20,000 ordinary life policy with double indemnity for accidental death and with family income benefit. The family income rider provides for payment of monthly income of $200 beginning one month from date of death and continuing until April 1, 1974, and for a final payment of $20,000 on that day. It also provides that: “ No beneficiary shall have the right to assign, encumber, alienate, anticipate, or commute any payment hereunder or to change the manner of settlement in any way unless such right is given the beneficiary by the owner in writing and is endorsed on the policy by an officer of the society.” No such indorsement appears on the policy; the only exception to the no commutation provision is that the company reserves the right if, by reason of loans, the monthly benefit to be paid is less than $20, to commute at 2%% and settle the policy in one lump sum. The widow contends that by contesting the validity of the policy the company repudiated it, entitling her as third-party beneficiary to recover for breach of contract the present value of sums payable in the future as well as all sums, with interest, that should have been paid to date. The company contends that the widow can now recover only sums heretofore payable with interest and that the widow cannot recover amounts payable under the policy after date of the judgment until the respective due dates of those amounts. In dollars and cents, with interest to November 2,1962, and with an adjustment resulting from the erroneous statement of the insured’s age, the widow asks judgment for $107,352.64; the *368 company argues that the judgment must be for $54,618.82, and concedes that there would then remain 137 installments of $214.95 each, plus a final payment of $21,494.84. The court agrees with the company’s contention.
Much of the argument set forth in the briefs revolves around whether a rule of damages similar to that governing anticipatory repudiation of a contract for the payment of money in installments (see 5 Williston, Contracts [Rev. ed.], p. 3740, § 1330A) should be applied to the present facts. The court does not find it necessary to decide that question, for it considers the clause prohibiting commutation or change of settlement by the beneficiary to be controlling. Since the enactment of chapter 327 of the Laws of 1911, it has been the law of New York (Personal Property Law, § 15) that: “ when the proceeds of a life insurance policy, becoming a claim by death of the insured, are left with the insurance company under a trust or other agreement, the benefits accruing thereunder after the death of the insured shall not be transferable, nor subject to commutation or incumbrance, nor to legal process except in an action to recover for necessaries, if the parties to the trust or other agreement so agree.” "While that provision was undoubtedly written with settlement options rather than a family income benefit rider in mind, the installments payable under such a rider are the proceeds of a matured policy and are left with the company under an agreement such as the provision contemplates. Family income benefit installments are, thus, literally within the purview of the statute.
Under the wording of the policy and of the statute, the widow ‘ ‘ never was to become entitled to the face value of the [rider] as an entity. The agreement of the company to make the monthly payments and the payment thereof was to constitute as to her the proceeds of the [rider] ” (Crossman Co. v. Rauch, 263 N. Y. 264, 272). And so strong is the public policy established by the above-quoted provision that, until the addition of subdivision 2 to section 17 of the Personal Property Law by chapter 828 of the Laws of 1945, commutation was not permitted even though the parent of the infant beneficiaries of the policy proceeds was without funds to support them and the funds were required for the beneficiaries’ support and education (Matter of Ñires, 290 N. Y. 78). Absent a showing that the widow is “ destitute of other sufficient means of support ” (Personal Property Law, § 17, subd. 2) she, therefore, could not obtain the rider income benefits in commuted form. “ And there is no reason why the mere fact that the insurance company believed that the policy had been fraudulently obtained should result, if it was wrong in *369 its contention, in substituting a lump sum payment * * * for the original installment contract ” (1 Scott, Trusts [2d ed.], p. 678, §87.1).
The widow argues, however, that she is the third-party beneficiary of the contract of insurance and that upon breach of that contract by the company’s repudiation of it, she, rather than the company, was entitled to elect either to seek specific performance of the policy by asking for a declaratory judgment or to seek present damages for the breach. Since her counterclaim seeks damages for breach, she says further that only a money judgment may be entered and unless it includes the present value of future payments she may be required to maintain a new action for each installment. The answer to the first argument is that the benefit she is entitled to enforce cannot be greater than that provided for her by her donor (the insured); it is not necessarily co-extensive with the rights the donor promisee would have were he seeking to enforce the promise (see 17 C. J. S., Contracts, p. 1137, § 519, subd. [h], par. bb). “ Reasonable bargains ought to be enforced in the way the parties intend * * * and I see no reason why a promisee should not have one right under the contract and a beneficiary another ” (Letter from Samuel Williston, quoted in Krueger and Waggoner, Life Insurance Policy Contract [1953], p. 92).
As concerns the form of the judgment and the possibility of a multiplicity of actions, there are a number of answers. “ The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished.” (Civ. Prac. Act, § 8; see CPLR, § 103.) Matrimonial judgments regularly require the payment of fixed installments. The installments required to be paid under the policy in suit are subject to no contingency at all for under the rider if the widow dies, whatever has not been paid to her will be paid to her personal representative; matrimonial installments are subject to change by court order or termination on death or remarriage. Since there are no contingencies, the judgment now to be entered constitutes a determination binding upon the insurer with respect to all future payments. The possibility that the company will nonetheless obdurately refuse payment may be obviated in either of the following ways: (1) by incorporating in the judgment a declaration of the future rights of the parties (while the widow has not asked for such a declaration, the demands of the wherefore clause do not limit the powers of the court), see Note, Anticipatory Breach and Disability Insurance: Rights and Remedies (7 Brooklyn L. Rev. 206, 216 et seq.); (2) by entering judgment for presently accrued and future installments in *370 separate paragraphs, that portion dealing with future installments providing for payment on the dates and in the amounts required by the policy, but incorporating the provision for commutation on the widow’s death (see Ann., 81 A. L. R. 379, 386; 99 A. L. R. 1171, 1177; Ackerman, Anticipatory Repudiation and Disability Insurance, 1 U. of Newark L. Rev. 47, 71). Apparently such a judgment may also provide that execution will issue if the required installments are not paid when due (see Libby v. Rosekrans, 55 Barb. 202, 216). Judgment in the instant case will, therefore, take the latter form.